UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CASE NO. 3:12-CV-000847

**LOCAL UNION NO. 369 OF THE
INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS, AFL-CIO-CLC,**
by and through its individual members,
**MARVIN FACKLER, LAMONT RUDOLPH
DEMETRIOUS DAVIS, TERRY SHUMAKE,
JUAN A. ROSA,**
and a class of others similarly situated                                             **PLAINTIFFS**

v.

**KENTUCKY ASSOCIATION OF
ELECTRICAL COOPERATIVE, INC.,
MICHAEL KOHLER, and TAIB
TIKVESA**                                                                                                  **DEFENDANTS**

**MEMORADUM OPINION AND ORDER**

This matter comes before the Court on the Plaintiffs' motion to remand this action to state court. (Pls.' Mot., Docket Number ("DN") 14.) The Defendants have responded. (Defs.' Resp., DN 15.) The Plaintiffs have replied. (Pls.' Reply, DN 17.) Fully briefed, the matter is now ripe for adjudication. For the following reasons, the Plaintiffs' motion is **GRANTED**.

**I.**

Faced with a motion to remand, the issue before the Court is whether it lacks jurisdiction to hear the Plaintiffs' state law claims or whether those claims are preempted by federal law, specifically the Labor Relations Management Act ("LMRA"), 29 U.S.C. § 185 (referred to hereinafter as "LMRA § 301" or "§ 301"). The Court holds that it lacks federal question jurisdiction because the state law claims asserted by the Plaintiffs do not require an interpretation of the CBA and are not based on rights created by the terms of the agreement. To the extent that that Plaintiffs' claims may relate to the collective bargaining agreement, that relationship is

1

merely tangential. Because these claims may be resolved without interpretation of the collective bargaining agreement and do not rely on rights created therein, the state law claims are not preempted by LMRA § 301, the Court lacks federal question jurisdiction pursuant to 28 U.S.C. § 1331, and the Defendants improperly removed.

## II.

The Plaintiffs are employed at a manufacturing plant owned by Defendant Kentucky Association of Electric Cooperatives, Inc. ("KAEC"). They are represented in this action by Local Union No. 369 of the International Brotherhood of Electrical Workers, AFL-CIO-CLC ("Local 369"). Local 369 negotiated a collective bargaining agreement ("CBA") with KAEC that governs the terms of the Plaintiffs' employment. According to the Plaintiffs, the existence of the CBA is irrelevant to the present proceedings because they do not seek to enforce or otherwise recover pursuant to their contractual rights arising under the CBA. Rather, they claim that their four-count complaint against KAEC and two of its employee supervisors, Michael Kohler ("Kohler") and Taib Tikvesa ("Tikvesa"), alleges only violations of Kentucky state law. The four counts are: (1) intentional infliction of emotional distress, (2) negligent retention, (3), negligent supervision, and (4) violation of the Kentucky Civil Rights Act ("KCRA"), KRS § 344.010 *et seq*.

The Plaintiffs filed this action in the Jefferson County Circuit Court on November 30, 2012. Soon thereafter, the Defendants removed to federal court. In their notice of removal, the Defendants recognized that the four counts stated in the Plaintiffs' complaint were alleged pursuant to Kentucky law. (*See* Notice of Removal, DN 1, ¶ 6.) Nevertheless, the Defendants removed on the theory that at least one, if not all of the counts, is preempted by LMRA § 301. If the Plaintiffs' claims are preempted by § 301, then this Court may properly exercise jurisdiction

because a federal question is present. Accordingly, whether this case should be remanded for lack of subject-matter jurisdiction turns on whether the Plaintiffs' claims are preempted by LMRA § 301.

## III.

Section 301 of the LMRA, 29 U.S.C. § 185(a), vests district courts with original jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees." As a result, § 301 generally preempts state laws covering the same subject, and cases falling within § 301 may be brought in or removed to federal court "without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a). Section 301 is not without boundaries, however. Whether a case is preempted by § 301 often turns on whether the allegations require an interpretation of a CBA. "Section 301's sphere of complete pre-emption extends to state law claims that are 'substantially dependent on analysis of a collective bargaining agreement,' but does not reach claims that only 'tangentially involve CBA provisions.'" *Alongi v. Ford Motor Co.*, 386 F.3d 716, 724 (6th Cir. 2004) (quoting *Fox v. Parker Hannifin Corp.*, 914 F.2d 795, 799-800 (6th Cir. 1990)). In other words, "state courts may evaluate state law claims 'involving labor-management relations only if such [claims] do not require construing collective-bargaining agreements.'" *DeCoe v. Gen. Motors Corp.*, 32 F.3d 212, 216 (6th Cir. 1994) (quoting *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 411 (1988)).

The Sixth Circuit follows a two-pronged approach for determining whether § 301 preemption applies. "First, the district court must examine whether proof of the state law claim requires interpretation of collective bargaining agreement terms. Second, the court must ascertain whether the right claimed by the plaintiff is created by the collective bargaining

agreement or by state law." *Id.* (citations omitted). If the right arises under state law "and does not invoke contract interpretation, then there is no preemption. However, if neither or only one criterion is satisfied, section 301 preemption is warranted." *Id.* If, under the first prong, "the plaintiff can prove all the elements of his claim without the necessity of contract interpretation, then his claim is independent of the labor agreement." *Id.* (citing *Dougherty v. Parsec, Inc.,* 872 F.3d 766, 770 (6th Cir. 1989)). Furthermore, "neither a tangential relationship to the CBA, nor the defendant's assertion of the contract as an affirmative defense will turn an otherwise independent claim into a claim dependent on the labor contract." *Id.* (citing *Fox*, 914 F.2d at 800). Thus, even on remand, a defendant can assert an affirmative defense under the CBA, but that defense is not grounds for removal.

## IV.

To determine whether § 301 preemption is applicable in this action, the Court examines each of the Plaintiffs' causes of action. Normally, the Court need only find one basis for federal question jurisdiction in order to exercise supplemental jurisdiction over the other pending claims. *See* 28 U.S.C. § 1441(c)(1). In this case, however, the Plaintiffs have represented that they will consider dismissing any claim that the Court finds preempted in order to facilitate remand. As a result, the Court fully examines each claim to determine which may be preempted.

### A.

The Plaintiffs' first cause of action is for the intentional infliction of emotional distress ("IIED"). They alleged that KAEC's supervisors, Kohler and Tikvesa, engaged in conduct at the manufacturing facility that was "extreme, outrageous, intolerable, and offensive," which caused them severe emotional distress. (Compl., DN 1-6, ¶¶ 23, 25.) For example, the supervisors allegedly screamed in employees' faces at great lengths, ordered them to engage in unsafe

activity, overtly and impliedly threatened them with retaliation, were demeaning to those of different racial or ethnic backgrounds, and even challenged the employees to physical confrontations. (*Id.* at ¶ 13.) In their response to the motion to remand, the Defendants do not claim that the Plaintiffs' right to pursue an IIED claim arises from the CBA. Rather, they argue that even though IIED is a state law claim it cannot be resolved without reference to the terms of the CBA, thereby triggering § 301 preemption.

In Kentucky, the elements of IIED are: "[1] intentional or reckless conduct; [2] conduct that is outrageous and intolerable because it offends against generally accepted standards of decency and morality; [3] a causal connection between the conduct and emotional distress; and [4] emotional distress which is severe." *Childers v. Geile*, 367 S.W.3d 576, 579 (Ky. 2012) (brackets added) (citing *Craft v. Rice*, 671 S.W.3d 247, 249 (Ky. 1984)). The parties' arguments as to whether the IIED claim is preempted by § 301 focus on the second element. The Plaintiffs argue that whether the conduct is outrageous is to be measured by "generally accepted standards of decency and morality," which in no way triggers, relies upon, or otherwise requires an interpretation of the CBA. The Defendants, on the other hand, claim that "generally accepted standard of decency and morality" are not judged against the duty owed to the public at large, but by the "context" of the relationship between the defendant and the plaintiff asserting IIED, and the context of the parties' relationship in this case is set forth in the CBA. The parties rely on numerous cases to support their positions. Having reviewed the various cases, the Court discusses those that are most relevant. Ultimately, the Court finds that the Plaintiffs' IIED claim is not preempted by § 301 because the claim arises from conduct falling outside of the scope of the CBA and does not require an interpretation of its provisions.

The Plaintiffs point the Court to cases where IIED claims have not been preempted by §

5

301. In *O'Shea v. Detroit News*, 887 F.2d 683, 684 (6th Cir. 1989), the plaintiff brought a number of claims, including an IIED claim, against the defendant on behalf of her deceased husband. A CBA governed the decedent's employment with the defendant. *Id.* at 685. On appeal, the Sixth Circuit Court of Appeals affirmed remand of the IIED claim because it was "based on allegations independent of any alleged violation of the [CBA]." *Id.* at 687. The court rejected the defendant's argument that the IIED claim was founded on the decedent's allegation that he had been wrongfully demoted. The CBA governed demotions, but "[s]tate . . . tort claims, however, are not the right vehicle for determining whether an employee was in fact demoted." *Id.* at 686. Accordingly, whether the decedent was wrongfully demoted was an independent question from whether the defendant inflicted emotional distress upon the decedent, and "the [defendant] could have tortuously caused [the decedent] emotional distressed without violating the contract." *Id.* at 687. A claim concerning the decedent's demotion would have fallen under the CBA and triggered § 301 preemption, but because the IIED claim did not rely on the demotion, the terms of the CBA were not implicated.

The case of *Daulton v. Jefferson Smurfit Corp.*, 979 F. Supp. 1187, 1190-92 (S.D. Ohio 1997), grew out of allegations of racial discrimination by Daulton's supervisor, which went so far as to include threats of physical violence. Among other claims, Daulton filed suit for IIED, and the defendant argued that the claim was preempted because a CBA governed the events. As in the present case, the court found that the IIED claim "turn[ed] upon whether the second element [of IIED], that the defendant acted outrageously, required interpretation of the [CBA]." *Id.* at 1200. "[I]f the allegedly outrageous conduct was the result of the [d]efendant exercising a right provided for under the [CBA], then Daulton's [IIED] claim is preempted." *Id.* at 1201. The court ultimately found that "[t]he racial slurs, the threats of physical violence, and the

6

endangerment of Daulton's life through the misuse of the cherry-picker all exist without the imprimatur of rights provided in the [CBA]." *Id.* In other words, nothing in the CBA granted the defendant the right to participate in the conduct Daulton alleged was outrageous. Therefore, the IIED claim did not require interpretation of the CBA and was not preempted by § 301. *Id.* ("As the outrageous conduct that forms the basis of the [IIED] claim was not the result of [the defendant] exercising his rights under the [CBA], § 301 does not apply.").

Finally, the Plaintiffs rely on *Peterson v. BMI Refractories*, 132 F.3d 1405 (11th Cir. 1998). In that case, the Eleventh Circuit Court of Appeals reversed the district court's finding that the IIED claim alleged by the plaintiffs was preempted by § 301. *Id.* at 1408. Like the present case, *Peterson* arose out of alleged racial discrimination and threats of violence. *Id.* at 1408-09. On appeal, the defendant argued that determining whether the conduct of its employees was outrageous required an interpretation of the governing CBA. *Id.* at 1413. The court disagreed, however, because the type of actions at issue – "racial taunts, an assault with a pistol," and physical violence – "cannot arguably be sanctioned by the terms of the CBA at issue, and as such a resolution of [the IIED] claim does not implicate the provision of the CBA." *Id.* at 1413. Unless the conduct was somehow sanctioned by the CBA, then it could not be preempted by § 301.

Sanctioning of the defendant's conduct under the terms of the CBA distinguishes *Barbo v. Kroger Co.*, 3:07-CV14-S, 2007 WL 2350181 (W.D. Ky. Aug. 7, 2007) (Simpson, J.) – a case the Defendants rely on heavily – from the present case. In *Barbo*, the plaintiff asserted IIED was caused by a hidden video camera the defendant company installed in the men's restroom. *Id.* at *1. Although never admitting to installing the camera, the defendant asserted that "if such installation occurred, it had a legal right under the CBA to mount the camera." *Id.* The court

7

went on to list several specific terms of the CBA that may have authorized the defendant to install the camera. *See id.* These terms included provisions that the defendant: (1) was "committed to maintaining a safe work environment"; (2) could institute disciplinary actions for "dishonesty, drug use and unauthorized work stoppage"; (3) established "the number and duration of employee rest periods"; and (4) had "complete control over the management of its business and its workforce." *Id.* The court concluded "the elements of [IIED] will require us to interpret the CBA." *Id.* at *2. Accordingly, whether the defendant's conduct was outrageous for the purposes of IIED would turn on the interpretation of these provisions and was therefore preempted by § 301. "If by mounting the camera, [the defendant] was merely pursuing [its] legal rights under the CBA, such conduct cannot be characterized as extreme and outrageous for the purposes of establishing [IIED]." *Id.*

In the present case, the Defendants claim that Article 4 of the CBA, entitled "Management Rights," is applicable and must be interpreted in order to determine whether the supervisors' conduct was outrageous for the purposes of the Plaintiffs' IIED claim. The Defendants specifically rely on the following except from Article 4:

> The operation, control and management of [KAEC's] facilities and operations, and all business activities of [KAEC] in connection therewith are covered or affected by this Agreement, and the *supervision and direction of the working forces* at such facilities, operations and business are and shall continue to be solely and exclusively the functions and rights of the management of [KAEC].

(CBA, DN 1-2, p. 6 (emphasis added).) The Defendants argue that the foregoing language must be interpreted in order to determine whether the supervisors' conduct was outrageous, thereby preempting the state law claim. The Court is not persuaded for two reasons. First, the excerpt cannot reasonably be read to cover the activity alleged by the Plaintiffs. Among other things, they claim that the supervisors berated the employees, ordered them to engage in unsafe

8

activities, threatened retaliation, made derogatory racial and ethnic remarks, and even challenged the employees to physical fights. (*See* Compl., DN 1-6, ¶ 13.) No reasonable interpretation could place these actions within the "supervision and direction of the working forces" at KAEC. The Defendants simply have not shown how the excerpt from Article 4 can or should be interpreted to cover their alleged conduct.

Second, portions of Article 4 not quoted by the Defendants show that the actions alleged by the Plaintiffs do not fall within the scope of the provision. Regarding employment practices, Article 4 provides:

> [T]his [CBA] does not affect and shall not be deemed or construed to impair or limit in any way [KAEC's] right in its sole discretion and judgment, to . . . [1] determine the size and composition of the working force covered by this [CBA], and assignment of work, and policies affecting the selection of employees; [2] establish and enforce quality, production, construction and services standards for its employees, services and products; . . . [3] establish and change production and work performance standards; [4] change, combine, establish or discontinue jobs or operations, set wage rate for such jobs or operations, and determine when and if vacancies in the working force shall be filed; . . . [and 4] determine the hours of operation . . . .

(CBA, DN 1-2, p. 3 (brackets added).) A reading of all relevant portions of Article 4 more clearly establishes what is covered by "Managerial Rights." None of the actions alleged by the Plaintiffs could reasonably fall under these provisions. The Plaintiffs' IIED claim is in no way reliant on a reading or interpretation of Article 4 of the CBA.

Other cases relied on by the Defendants are distinguishable from the present action. First, *Pratt v. Brown Mach. Co., a Div. of John Brown, Inc.*, 855 F.2d 122 (6th Cir. 1988), and *Smith v. Franklin Cnty.*, 227 F. Supp. 2d 667 (E.D. Ky. 2002) were cases involving IIED claims, but no CBA was at issue, and the courts did not analyze whether the IIED claims were preempted by § 301. Second, *Mattis v. Massman*, 355 F.3d 902 (6th Cir. 2004), is more on point, but is also distinguishable. There, the court of appeals reversed the district court and found that the IIED

9

claims was preempted by § 301. *Id.* at 904. The court did so because the plaintiff's allegations "all involve[d] workplace actions taken under the ostensible authority of the CBA, and seems to be a subtle attempt to present contract claims in tort clothing." *Id.* at 908. Specifically, the plaintiff claimed that the defendant supervisor "ignored his seniority rights in assigning him jobs, failed to train him properly, assigned him the most strenuous jobs, prevented him from receiving his pay on time, reduced his vacation days, and punished [the plaintiff] for using the company phone." *Id.* All of these actions were more in the nature of a contract than a tort. Accordingly, "[w]ithout reference to the CBA, we could not possibly know whether [the defendant supervisor] acted outrageously or was merely insisting on his legal rights as a supervisor charged with ensuring compliance with the rules of the factory." *Id.* In the present case, the alleged actions by the Defendants are not a "subtle attempt to present contract claims in tort clothing." *Mattis* is distinguishable because the plaintiff's IIED claim relied on the defendant's actions that were "taken under the ostensible authority of the CBA." *Id.* As examined above, however, none of the actions alleged by the Plaintiffs fall within the relevant provisions of the CBA.

Finally, *Lemaster v. Anchor Hocking, LLC*, No. 2:11-CV-549, 2012 WL 3224094 (S.D. Ohio Aug. 6, 2012), is distinguishable for many of the same reasons. In *Lesmaster* the court found that the plaintiff's "termination is the basis of his IIED claim." *Id.* at *5. Determining whether the plaintiff's termination was "'extreme and outrageous' . . . would require the Court to interpret the CBA" because the manner and method of termination was provided for therein. *Id.* For this reason, the court found that termination was "governed by the terms of the CBA." *Id.* Again, in the present case, the conduct alleged of the Defendants cannot reasonably be found to be governed, approved, or sanctioned by the CBA because it does not fall within the agreement's terms.

Overall, the Court finds, based on the facts of this case, that prosecution of the Plaintiffs' claim for the intentional infliction of emotional distress does not require reference to or interpretation of the CBA. Therefore it is not preempted by LMRA § 301.

**B.**

The Plaintiffs' second and third causes of action allege that KAEC negligently retained and supervised Kohler and Tikvesa, two supervisors at the manufacturing plant and defendants in this action. Because the causes of action are similar, the Court analyzes them jointly. In Kentucky, the elements of negligent retention are: "(1) the employer knew or reasonably should have known that an employee was unfit for the job for which he was employed, and (2) the employee's placement or retention at that job created an unreasonable risk of harm to the plaintiff." *Ten Broeck Dupont, Inc. v. Brooks*, 283 S.W.3d 705, 733 (Ky. 2009) (citing *Oakley v. Flor-Shin, Inc.*, 964 S.W.2d 438, 442 (Ky. Ct. App. 1998)). Similarly, to state a claim for negligent supervision of an employee, "the plaintiff must allege that the defendant [1] knew or had reason to know of the employee's harmful propensities; [2] that the employee injured the plaintiff; and [3] that the hiring, supervision, or retention of such employee proximately caused the plaintiff's injuries." *Grand Aerie Fraternal Order of Eagles v. Carneyhan*, 169 S.W.3d 840, 844 (Ky. 2005) (brackets added) (quoting 27 Am. Jur. 2d *Employment Relationships* § 401 (2004)).

The Plaintiffs argue that the negligent retention and supervision claims do not implicate the CBA for two reasons. First, the duty not to harm another through the negligent retention or supervision of an employee is owed to society at large and is not created by the terms of the CBA at issue. In support of their argument, the Plaintiffs rely on *Ward v. Circus Circus Casinos, Inc.*, 473 F.3d 994 (9th Cir. 2006). The KAEC does not specifically object to this argument. Rather it

11

claims the "parties negotiated the parameters of [this] duty when [they] adopted the management rights clause [found in Article 4] of the CBA." This brings the Court to the Plaintiffs' second argument, that the terms of the CBA are not implicated for the negligent retention and supervision claims because Article 6 of the CBA explicitly states that employees "employed in supervisory and management position shall be excluded from the bargaining unit." (CBA, DN 1-2, p. 8.) Because the duty to prevent harm from negligent retention or supervision of employees does not arise from the CBA and because the CBA states that it does not apply to supervisory employees, the Plaintiffs argue that these causes of action cannot invoke the CBA or trigger § 301 preemption. The Court agrees.

In this case, KAEC claims that the CBA must necessarily be interpreted in order to determine the scope of its duty to retain and supervise Kohler and Tikvesa. It is difficult to see how the CBA could be implicated, however, when Article 6 states that those "employed in a supervisory . . . position shall be excluded from the bargaining unit" and are therefore not covered by the CBA. KAEC is correct that the "Managerial Rights" provision in the CBA says that the "supervision and direction of the working forces [at KAEC facilities] . . . are and shall continue to be solely and exclusively the functions and rights of the management of [KAEC]." But this provision in no way describes or otherwise alters KAEC's duty not to negligently retain or supervise its supervisors. No reference to or interpretation of this provision is necessary to adjudicate the Plaintiffs' claims.

*Gore v. AT&T Corp.*, No. 2:09-CV-854, 2010 WL 3118377 (S.D. Ohio Aug. 6, 2010), on which the Plaintiffs rely heavily, is on point with the present case. In *Gore*, the plaintiffs asserted a negligent retention claim against the defendant for acts by one of its supervisors, an individual named Dunn. Because Dunn was a supervisor, however, "[his] terms of employment [were] not

in fact subject to the CBA." *Id.* at *3. Therefore, "it necessary follows . . . that the claim of negligent hiring/retention is not preempted by the LMRA." *Id.* The "pertinent inquiry for the negligent hiring/retention claim is whether [Dunn's] relationship with his employer is governed by the CBA – not whether Plaintiff's relationship is governed by the CBA. Since [Dunn's] employment is not governed by the CBA, this claim does not involve interpretation of the CBA." *Id.* As in *Gore*, the CBA at issue in this case does not extend to the supervisors, Kohler and Tikvesa, and is in no way implicated by the negligent retention and supervision claims.

Counter to *Gore*, KAEC relies on *Brown v. Royal Consumer Prods.*, No. 3:06-CV-419-S, 2008 WL 2795334 (W.D. Ky. July 18, 2008) (Simpson, J.), wherein a sister court in this district declined to remand a negligent supervision claim because it was preempted by § 301. The court found that "[s]ection 301 preempts [the negligent supervision] claim because 'any duty relating to the hiring, supervision or retention of employees in the collective bargaining context . . . arise[s] solely from the [CBA] . . . [and] resolution of these types of claims . . . require[s] interpretation of that agreement.'" *Id.* at *4 (quoting *Weatherholt v. Meijer Inc.*, 922 F. Supp. 1227, 1232 (E.D. Mich. 1996)). *Brown* is distinguishable from the present case for two reasons. First, the Plaintiffs have not asserted a negligent retention or supervision claim in the "collective bargaining context." They repeatedly assert that their claims are based solely on violations of state law and that they do not intend to invoke the CBA. Second, and most importantly, the main case that *Brown*'s reasoning rests on, *Morris v. Ambassador Nursing Home, Inc.*, 854 F. Supp. 1164 (E.D. Mich. 1994), is factually distinguishable from the present circumstances.

In *Morris*, the plaintiff, a nurses aid, was accused of abusing a resident at the defendant nursing home. *Id.* at 1166. The facility's Director of Nursing and its Administrator conducted an investigation into the allegations and ultimately terminated the plaintiff's employment. Based on

13

the facility's policy and Michigan law, the nursing home notified the Michigan Department of Health about the alleged abuse. *Id.* The attorney general instituted criminal proceedings against the plaintiff, which were ultimately dismissed. *Id.* Following resolution of the criminal action, the plaintiff filed suit against the nursing home and its supervisory employees alleging, among other things, "negligent hiring, supervision and retention of the individual defendants." *Id.* The defendants removed on the basis of § 301 preemption "because the CBA between [the nursing home] and the Union contains provisions which address the course of conduct the employer is to follow in the event an employee is accused of abusing a patient." *Id.* In addition to stating that the nursing home had the right to make reasonable rules for the conduct of its employees, the CBA also provided that "the Union and its members agree to adhere to and be governed by all rules and regulations not in conflict with the [CBA]." *Id.* The nursing home created a "personnel policies" manual separate from the CBA, which stated that "any incident or suspected incident of abuse must be reported to the Director of Nursing or Administrator immediately and they shall in turn contact the Michigan Department of Public Health." *Id.* The policy manual was incorporated into the CBA by reference and provided for the specific factual situation at issue. Therefore, referencing it was clearly necessary to resolve the dispute.

The court found the negligent supervision and retention claims were preempted by § 301 because the "nature of [the nursing home's] obligation to plaintiff with respect to its hiring, supervision and retention of the other defendants is governed by the CBA *by virtue of its reference* to [the nursing home's] policies for employee conduct and discipline." *Id.* at 1167 (emphasis added). In other words, the negligent supervision and retention claims were preempted because the personnel policies manual, providing for the exact factual circumstances at issue, was incorporated by reference into the CBA. No such situation is before the Court in

14

the case *sub judice*, and, therefore, the Defendants' reliance on *Brown* in unpersuasive. This is not to say that *Brown* was wrongly decided. The present case is simply in a different factual posture than those cases on which *Brown* relies. Here, the CBA, if it applies at all, does not contain standards for addressing the performance of supervisors.

Finding that *Brown* is distinguishable and not controlling furthers the policy that removal statutes are to be strictly construed and all doubts concerning the validity of removal are to be construed against it. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941). Overall, the Court finds that the Plaintiffs' claims for negligent retention and supervision of Kohler and Tikvesa do not require reference to or interpretation of the CBA. Those claims are not preempted by LMRA § 301.

## C.

The final cause of action asserted by the Plaintiffs is a violation of the Kentucky Civil Rights Act ("KRCA"), KRS § 344.010 *et seq*. They claim that the Defendants' actions described above "created a hostile work environment on the bases of race, disability, and ethnic origin," and that "actions and omissions of KAEC . . . constitute a pattern and practice of discrimination on the bases of race, disability, and ethnic origin." (Compl., DN 1-6, ¶¶ 35-36.) To state a claim for hostile work environment based on race, disability, or ethnicity, the Plaintiffs must show: (1) they were members of a protected class; (2) they were subject to unwelcome harassment; (3) the harassment complained of was based upon being a member of the protected class; (4) the harassment unreasonably interfered with the Plaintiffs' work performance or created a hostile or offensive work environment that was severe and pervasive; and (5) the employer knew or should have known of the charged harassment and failed unreasonably to take promote and appropriate

15

corrective action. *See Fenton v. HiSAN, Inc.*, 174 F.3d 827, 829-30 (6th Cir. 1999).[1]

In their response to the Plaintiffs' motion to remand, the Defendants admit that they "do not contend that the Plaintiffs' [KCRA] claims seek to vindicate rights dependent on the parties' CBA." (Defs.' Resp., DN 15, p. 7.) In other words, the discrimination claim does not arise from the CBA. Rather, the Defendants argue that the "Plaintiffs' claims are still preempted by § 301 because they seek equitable remedies that will impact the parties' rights under the CBA." *Id.* In support of their position the Defendants rely exclusively on *Klepsky v. United Parcel Serv.*, 489 F.3d 264 (6th Cir. 2007). *Klepsky* stands for the proposition that even if the claim asserted does not trigger § 301 preemption, the *relief* requested on that claim can require an interpretation of a CBA, thereby creating a basis for preemption. *See id.* at 270.

In *Klepsky*, the plaintiff claimed he was terminated from employment in violation of the Ohio Whistleblower Protection Act and Ohio public policy. *Id.* at 267. In addition to money damages, he requested injunctive relief in the form of "reinstatement" at his job. *Id.* at 270. Although the plaintiff's claims arose under state law, the defendant removed based on LMRA § 301 preemption, alleging that the dispute required interpretation of a CBA. *Id.* at 269. On appeal, the Sixth Circuit Court of Appeals held that the plaintiff's state law claims were preempted because even though "the causes of action that [he] pursues do not support preemption on their own [under the terms of the CBA], the *relief* he seeks is a different question, and does support preemption." *Id.* at 270. The plaintiff sought reinstatement in his old position, an equitable remedy requiring any court granting such relief to interpret the terms of the CBA governing his pervious employment. "Even if he does not explicitly rely on terms of the CBA

---

[1] Although *Fenton* arose out of Ohio, its listing of the elements of a hostile work environment claim are applicable to the KCRA because courts of this district "use federal Title VII standards to evaluate state race discrimination claims brought under Kentucky's Civil Rights Act." *Wilson v. Dana Corp.*, 210 F. Supp. 2d 867, 877 (W.D. Ky. 2002) (citing *Smith v. Leggett Wire Co.*, 220 F.3d 752, 758 (6th Cir. 2002); *Steward v. Univ. of Louisville*, 65 S.W.3d 536, 539 (Ky. Ct. App. 2001)).

pertaining to reinstatement, his request for reinstatement would, at a minimum, seem to implicate such rights and require interpretation of the CBA. For this reason, we find that preemption exists under the LMRA." *Id.*

In the present case, the Defendants argue for preemption because the Plaintiffs' complaint requests "[i]njunctive relief prohibiting the Defendant from further abusive conduct." (Compl., DN 1-6, p. 9.) They argue that any injunctive relief granted by the Court will necessarily require it to, like the court in *Klepsky*, interpret the terms of the applicable CBA. The Court disagrees. As discussed above, nothing in the portions of the CBA cited by the Defendants sanctions or authorizes the supervisors to engage in discriminatory conduct based on race, ethnicity, or disability. In fact, if it did so the CBA would be in violation of the KCRA. The injunctive relief requested by the Plaintiffs does not request reinstatement or some other relief that would require interpretation of the CBA. It merely requests that the Defendants be prohibited from engaging in discriminatory and abusive conduct, conduct that the CBA cannot authorize. The CBA is in no way implicated by the request for injunctive relief, and the Plaintiffs' claims under the KCRA are not preempted by LMRA § 301.

## CONCLUSION

The Plaintiffs moved to remand this action to state court because the Court lacks subject matter jurisdiction. For all of the foregoing reasons, the Plaintiffs' motion is **GRANTED**, and **IT IS HEREBY ORDERED** that this action is **REMANDED** to the Jefferson County Circuit Court.